IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **RONALD JOE JOHNSON and** | ) | Case No. 13-00806-TOM -7 |
| **DAWN MARIE JOHNSON,** | ) | |
| | ) | |
| **Debtors.** | ) | |

_____

| | | |
|---|---|---|
| **RONALD JOE JOHNSON and** | ) | |
| **DAWN MARIE JOHNSON,** | ) | |
| | ) | |
| Plaintiffs, | ) | A.P. No. 13-00102-TOM |
| vs. | ) | |
| | ) | |
| **U.S. DEPARTMENT OF EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court following a trial on November 9, 2015, on a complaint to determine the dischargeability of student loan debts filed by the plaintiffs, Ronald Joe Johnson and Dawn Marie Johnson. Appearing at the trial were Ronald Joe Johnson, *pro se*, and Richard O'Neal, attorney for the defendant United States Department of Education. The Court has jurisdiction pursuant to 28 U.S.C. §§151, 157(a) and 1334(b) and the United States District Court for the Northern District of Alabama's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding as defined in 28 U.S.C. §

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
    The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

157(b)(2)(I).[2] The Court has considered the pleadings, the arguments, the evidence, and the law, and finds and concludes as follows.[3]

## **FINDINGS OF FACTS**[4]

Debtor Ronald Johnson seeks to discharge his student loan indebtedness owed to the United States Department of Education ("Department of Education"). The facts in this adversary proceeding are uncontested and in large part are set out in the Stipulation of Facts, Admissibility of Exhibits and to the Facts Contained in the Exhibits entered into by the parties and admitted into evidence (the "Stipulation"). Exhibit 1 of the Stipulation reflects that Mr. Johnson obtained student loans from August 1994 through August 1997 in the amounts of $800.00 and $1,000.00, to be repaid with interest accruing at the rate of 5.000% per year. After Mr. Johnson defaulted on his payments the loans were assigned to the Department of Education. At the time of the assignment, Mr. Johnson owed a total of $1,660.03, comprised of $1,300.00 principal and $360.03 interest. As of October 23, 2013, Mr. Johnson owed $52.88 principal and $10.75 interest, for a total of $63.63. Interest continues to accrue on the principal at the rate of $0.01 per day.

Exhibit 2 of the Stipulation reflects that Mr. Johnson obtained a Direct Consolidation loan from the Department of Education in December 2000 in the amounts of $10,138.44 and $14,805.20, to be repaid with interest accruing at the rate of 8.250% per year. After credit for payments from all sources totaling $10,194.97, Mr. Johnson owed principal in the amount of

---

[2] 28 U.S.C. § 157(b)(2)(I) provides:
    (b)(2)Core proceedings include, but are not limited to–
        (I) determinations as to the dischargeability of particular debts[.]

[3] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See *ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

Case 13-00102-TOM   Doc 38   Filed 11/24/15   Entered 11/24/15 12:23:42   Desc Main
Document    Page 2 of 12

$24,943.64 and interest in the amount of $16, 763.54 as of October 23, 2013. Interest continues to accrue on the principal at the rate of $5.63 per day.

Mr. Johnson testified at trial that the student loan debt at issue in this case was incurred approximately 20 years ago. He testified that although he attended school for four semesters he was able to complete only one of them, and that he has not received any benefit from his attendance. Mr. Johnson believes he has paid almost all of the principal balance of his student loans, albeit mostly through garnishment of his income and income tax refunds, and that the balance of his student loan debt is comprised primarily of interest and penalties. Mr. Johnson explained that he is not trying to get out of paying the debt, but that he is asking that something be done about the amount of penalties and interest that he owes. He understands that many of the repayment options offered by the Department of Education take income into account. Mr. Johnson testified that he spoke with someone about repayment options earlier this year, who indicated that he would have to wait until this adversary proceeding was resolved before he could further investigate his options. Mr. Johnson stated that he brings home around $2,000.00 per month from his jobs at the City of Alabaster and Walmart. In addition, he indicated that his wife does not work, that they have no children living at home, and that he does not pay child support.[5]

The Department of Education offered no testimony at trial, relying instead on the Stipulation and attached exhibits. Mr. Johnson admits in the Stipulation that the student loan debt at issue is student loan debt of the type covered by 11 U.S.C. section 523(a)(8). He concedes that it would not impose an undue hardship on him or his dependents to pay the student

---

[5] The schedules filed by Mr. and Mrs. Johnson in 2013 indicate that their granddaughter, then age 5, was their dependent. The granddaughter was not mentioned either in the Complaint, in the Stipulation, or at trial.

3

loan debt,[6] and furthermore, that neither he nor his dependents have serious physical or mental disabilities that would prevent him from obtaining and maintaining employment. In addition, Mr. Johnson acknowledges that, with the exception of one $150.00 payment, all payments applied to the consolidated student loan came from wage garnishments and the offset of federal income tax refunds.[7] Finally, Mr. Johnson admits that from the period of May 14, 2001 through January 16, 2015, he did not apply for one of the repayment options available through the Department of Education.

## CONCLUSIONS OF LAW

Congress' main purpose in enacting the Bankruptcy Code was to ensure the insolvent debtor a fresh start by discharging his prepetition debts. *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934)). In furtherance of Congress' fresh start policy, the Eleventh Circuit has generally construed exceptions to discharge narrowly. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994). However, 11 U.S.C. § 523(a)(8) specifically provides that only in certain circumstances will education loans extended by or with the aid of a governmental unit or nonprofit institution, or certain other educational loans identified in the Internal Revenue Code, be discharged in bankruptcy.[8] Several reasons

---

[6] Paragraph 8 of the Stipulation indicates that it would not be a hardship on Mr. Johnson and his dependents to repay the student loan debt referenced on Exhibit 1 to the Stipulation; the Stipulation is silent as to the debt referenced on Exhibit 2. The Court presumes that the omission is an oversight since no evidence was presented at trial regarding undue hardship in connection with the debt referenced on Exhibit 2.

[7] It is unclear from the Stipulation and attached documents whether the payments credited on the loan referenced on Exhibit 1 were paid voluntarily or were received from garnishments.

[8] 11 U.S.C. § 523(a)(8) provides:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
. . .
   (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
     (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
     (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

4

have been cited to explain why Congress excepted student loans from discharge. One source claims that it was in response to "the perceived need to rescue the student loan program from insolvency, and to also prevent abuse of the bankruptcy system by students who finance their higher education through the use of government backed loans, but then file bankruptcy petitions immediately upon graduation even though they may have or will soon obtain well-paying jobs, have few other debts, and have no real extenuating circumstances to justify discharging their educational debt." *Green v. Sallie Mae (In re Green)*, 238 B.R. 727, 732-33 (Bankr. N.D. Ohio 1999) (citing "Report of the Commission on the Bankruptcy Laws of the United States," H.R. Doc. No. 93-137, 93d Cong., 1st Sess., Pt. II 140, n.14). Another source claims that Congress enacted 11 U.S.C. § 523(a)(8) to ensure that these kinds of loans could not be discharged by recent graduates who would then pocket all future benefits derived from their education. *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir. 1992) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 466-75 reprinted in 1978 U.S.C.C.A.N. 5787).

However, notwithstanding these policy concerns, Congress also realized that not all student debtors abused the bankruptcy system, and that some student debtors were truly in need of bankruptcy relief. Thus, Congress determined that an absolute bar to the dischargeability of student loan debts would be too harsh and also unnecessary to effectuate the foregoing policy goals. Consequently, unlike other types of debt, such as alimony and child support for which a debtor cannot receive a bankruptcy discharge, Congress permitted student loan debts to be discharged if the debtor could demonstrate extenuating circumstances.

A student loan is not dischargeable "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C.§ 523(a)(8).

---

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

5

The creditor bears the initial burden of both proving that a debt is owed and such debt is the type contemplated by § 523(a)(8). *Roe v. The Law Unit, et al. (In re Roe)*, 226 B.R. 258, 268 (Bankr. N.D. Ala. 1998). Once proven, the burden shifts to the debtor to show that repayment of the debt would cause an undue hardship. *Id*. The appropriate standard of proof for § 523(a)(8) is a preponderance of the evidence. *Grogan v. Garner*, 498 U. S. 279, 290 (1991).

## A. The Debt

Mr. Johnson acknowledges in the Stipulation that the debt owed to the Department of Education is the type of debt contemplated by § 523(a)(8), and he does not dispute that he owes it. Therefore, the burden at trial was shifted to Mr. Johnson to prove that repayment of the debt would be an undue hardship on him and his dependents.

## B. Undue Hardship

The Eleventh Circuit Court of Appeals adopted the three part test for proving "undue hardship" that was first articulated by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987). *Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir. 2003). Quoting *Brunner*, the Eleventh Circuit noted that

> [to establish "undue hardship," the debtor must show] (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Cox*, 338 F.3d at 1241. For Mr. Johnson to discharge his student loan debt he must prove all three elements of the *Brunner* test.

### 1. First *Brunner* Factor

The first *Brunner* factor requires Mr. Johnson to prove that based on his current income and expenses he cannot maintain a "minimal" standard of living for himself and his wife if he is

6

Case 13-00102-TOM    Doc 38    Filed 11/24/15    Entered 11/24/15 12:23:42    Desc Main
Document      Page 6 of 12

forced to repay the student loan. Courts have taken differing views about what constitutes a "minimal" standard of living. Few courts still use the United States Department of Health and Human Services Poverty Guidelines as a "bright line" determination of the minimal standard of living for student loan dischargeability purposes.[9] This Court does not believe that, in most cases, a debtor and his family living at or slightly above the federally defined poverty line is maintaining a "minimal" standard of living. Therefore, this Court rejects the notion that a debtor must fall below the federal poverty line to discharge a student loan.

This Court believes that a more thoughtful, analytical approach should be taken. A minimal standard of living lies somewhere between "poverty and mere difficulty." *McLaney v. Kentucky Higher Educ. Assistance Authority (In re McLaney)*, 314 B.R. 228, 234 (Bankr. M.D. Ala. 2004). The court must examine the debtor's living situation to ensure that the debtor has no unnecessary and frivolous expenses; however, the debtor should not be forced to live in abject poverty with no comforts. Judge Benjamin Cohen best described a minimal standard of living as "a measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities." *Ivory v. United States Dep't of Educ. (In re Ivory)*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001). *Brunner* requires that this determination be based on the debtor's current income and expenses; thus the Court must look at the debtor's income and expenses at the time of trial. *See Cox*, 338 F.3d at 1241.

2. **Second *Brunner* Factor**

---

[9] These guidelines define eligibility for certain government benefits and programs and are designed to assist the needy and economically disadvantaged. According to the 2014 Health and Human Services Poverty Guidelines, the poverty level for a family of two is $15,930 per year. Federal Register, Vol. 80, No. 14, January 22, 2015, pp. 3236-37, available at https://www.federalregister.gov/articles/2015/01/22/2015-01120/annual-update-of-the-hhs-poverty-guidelines (last visited November 24, 2015).

7

The second *Brunner* factor requires the debtor to show additional circumstances indicating that his state of affairs (that is, the inability to maintain a minimal standard of living if forced to repay the student loans) is "likely to persist for a significant portion of the repayment period." *Brunner*, 831 F.2d at 396. These circumstances must demonstrate a "certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Nys v. Educ. Credit Mgmt. Corp. (In re Nys)*, 308 B.R. 436, 443 (B.A.P. 9th Cir. 2004). *See also Cox*, 338 F.3d at 1242. While there is no definitive list of what are considered "additional circumstances," they may include:

> 1. Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement;
> 2. The debtor's obligations to care for dependents;
> 3. Lack of, or severely limited education;
> 4. Poor quality of education;
> 5. Lack of usable or marketable job skills;
> 6. Underemployment;
> 7. Maximized income potential in the chosen educational field, and no other more lucrative job skills;
> 8. Limited number of years remaining in work life to allow payment of the loan;
> 9. Age or other factors that prevent retraining or relocation as a means for payment of the loan;
> 10. Lack of assets, whether or not exempt, which could be used to pay the loan;
> 11. Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income;
> 12. Lack of better financial options elsewhere.

*In re Nys*, 308 at 446-47 (internal citations omitted).

### 3. Third *Brunner* Factor

The third *Brunner* factor requires showing that the debtor made a good faith effort to repay the RBS student loan. *Brunner*, 831 F.2d at 396. What is considered a debtor's good faith effort varies widely among courts; however, courts are generally reluctant to find good faith where a debtor made minimal or no payments on his or her student loans. *See, e.g., Murphy v. CEO/Manager, Sallie Mae, et al. (In re Murphy)*, 305 B.R. 780 (Bankr. E.D. Va. 2004) (no good

8

faith where the debtor made no payments on her student loans); *Garrett v. New Hampshire Higher Educ. Assistance Found., et al. (In re Garrett)*, 180 B.R. 358, 364 (Bankr. D.N.H. 1995) (no good faith shown where "[t]he record is devoid of any payment made by [the debtor] on these loans or even any attempt to enter into a repayment schedule with [the lenders]"). Other factors to consider include the amount of the student loan debt as a percentage of the debtor's total indebtedness and whether the debtor attempted to find employment. *See, e.g., Murphy*, 305 B.R. at 798-99 (citing *Hall v. U.S. Dep't of Educ. (In re Hall)*, 293 B.R. 731, 737 (Bankr. N.D. Ohio 2002)).

Some courts also consider whether the debtor attempted to negotiate a repayment plan, or explored various repayment options such as the standard repayment plan, extended repayment plan, graduated repayment plan and income contingent repayment plan. *See, e.g., Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*, 464 F.3d 878, 884-85 (9th Cir. 2006); *Cota v. U. S. Dept. of Educ. (In re Cota)*, 298 B.R. 408, 414 n.7, 420 (Bankr. D. Ariz. 2003). A debtor's failure to take advantage of those repayment options is not per se indicative of bad faith, however. *Cota*, 298 B.R. at 420. The U.S. Department of Education's repayment plans may not be used as a sword to prevent dischargeability of student loans if the debtor chooses not to participate in them.

As an initial matter, Mr. Johnson has already stipulated that he cannot establish the three *Brunner* factors. In the Stipulation introduced into evidence, Mr. Johnson admits that repayment of the student loans will not impose an undue hardship on him and his dependents; that neither he nor his dependents have a serious mental or physical impairment that would prevent him from working; and that in large part he has not voluntarily made payments on the loans or entered into one of the repayment options offered by the Department of Education. The Stipulation aside,

9

Mr. Johnson presented no evidence at trial that could lead this Court to conclude that any of the *Brunner* factors have been met. First, Mr. Johnson must establish that under his circumstances at the time of trial he cannot maintain a minimal standard of living for his family if he repays the student loans. He testified that he brings home $2,000.00 per month from his two jobs and his wife has no income. Mr. Johnson did not testify regarding his current expenses. His schedules were last amended in 2013 and thus shed no light on his present situation. Mr. Johnson's Complaint indicates that he and his wife must pay for insulin and other supplies necessary to treat Mrs. Johnson's diabetes but there is no evidence of the cost of her medications or how much, if any, of these expenses are covered by insurance. Mr. Johnson testified that he and his wife have no dependents, so there are no expenses for which the Johnsons are responsible other than their own. The Court cannot conclude that Mr. Johnson is unable to maintain a minimal standard of living while he repays the student loan.

Because Mr. Johnson must establish all three prongs of the *Brunner* test in order to discharge his student loans, it is unnecessary for the Court to determine whether the second and third prongs of the test have been met. Nonetheless, the Court will briefly discuss the remaining elements. To meet the second prong Mr. Johnson would have to show additional circumstances indicating that his inability to maintain a minimal standard of living would likely continue during a significant portion of the loan repayment period. Mr. Johnson is not elderly, and he admitted in the Stipulation that neither he nor his wife had serious mental or physical disabilities that could prevent him from working. It does not appear that Mr. Johnson has a "certainty of hopelessness" that will persist throughout the loan repayment period. The third prong requires that Mr. Johnson demonstrate he has made a good faith effort to repay the loan. Both Mr. Johnson's testimony and the admissions in the Stipulation reflect that Mr. Johnson has made one voluntary

10

payment of $150.00, at least with regard to the consolidated loan. All other payments applied to the loan have been collected through garnishment of Mr. Johnson's wages or offset of his federal income tax refunds. The testimony and Stipulation further reflect that Mr. Johnson has not attempted to repay the loans through any of the repayment options available from the Department of Education. Mr. Johnson has not established that he has made a good faith effort to repay the student loans.

It was clear from Mr. Johnson's testimony at trial that he wanted this Court to somehow adjust or reduce the amount of interest and penalties that have accrued on his loans. However, when Mr. Johnson obtained the student loans he agreed to pay the interest that accrued on the loans as well as late fees or other charges assessed on the loans due to his failure to repay the loan as agreed. Although this Court is sympathetic to Mr. Johnson's dilemma – he still owes a significant amount on loans that he claims did not render any financial benefit to him - the Court cannot re-write the contract between the parties to reduce or forgive any amounts due. Mr. O'Neal, counsel for the Department of Education, indicated that he knew of no program available that would reduce or forgive interest accrued and penalties assessed on the student loans. However, the repayment options offered by the Department of Education may provide Mr. Johnson with a feasible payment schedule for repaying his student loans. For the reasons stated herein, Mr. Johnson has not proven undue hardship under the *Brunner* test and is therefore not entitled to a discharge of the Department of Education student loan debt under 11 U.S.C. section 523(a)(8). Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Debtors, Ronald Joe Johnson and Dawn Marie Johnson, to declare the student loan debt due and owing to the United States Department of Education dischargeable pursuant to 11 U.S.C. § 523(a)(8) is

**DENIED.**  The balance of the debt owed to Defendant, United States Department of Education, is hereby declared to be **NONDISCHARGEABLE**.

Dated: November 24, 2015                             /s/ Tamara O. Mitchell
                                                       TAMARA O. MITCHELL
                                                      United States Bankruptcy Judge

TOM/dgm

12

Case 13-00102-TOM    Doc 38    Filed 11/24/15    Entered 11/24/15 12:23:42    Desc Main
Document      Page 12 of 12